IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BILLY G. SMITH,                          )
                                         )
                    Plaintiff,           )
                                         )   CIVIL ACTION
v.                                       )
                                         )   No. 06-1256-MLB-JTR
                                         )
MICHAEL J. ASTRUE,[1]                    )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )
_____  )

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income for the period Apr. 22, 1993 through November, 2000 under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

JUDGMENT be entered REMANDING this case to the Commissioner for award of disability insurance benefits with a date of disability onset of Oct. 1, 1995.

I.   **Background**

    This is the third time plaintiff has sought judicial review of a final decision since he first protectively filed the applications at issue on Oct. 16, 1995.  (R. 118, 289-312, 583-604); Smith v. Apfel, No. 99-1120-MLB (Doc. 1) (D. Kan. Apr. 2, 1999); Smith v. Barnhart, No. 02-1120-JTM (Doc. 1) (D. Kan. Apr. 10, 2002); Smith v. Astrue, No. 06-1256-MLB (Doc. 1) (Aug. 24, 2006).[2]  Plaintiff's applications were denied initially, upon reconsideration, and after three hearings before Administrative Law Judge (ALJ) Melvin B. Werner.  (R. 14-24, 25-117, 125-26, 136-47).

    In its first review, the court determined that the ALJ failed to properly evaluate whether plaintiff's condition meets or equals a listed impairment and that the ALJ failed to even identify any listing he had considered.  (R. 296-300).  The court also noted that the ALJ's findings are not supported by substantial evidence in the record because the ALJ had misstated the record, misunderstood or mischaracterized the evidence, ignored certain evidence favorable to plaintiff, inaccurately and

_____

    [2]All citation in this opinion to the earlier courts' opinions will be to the applicable pages in the administrative record.

incompletely stated certain facts, and cut off plaintiff's
questioning of the medical expert and of the vocational expert.
(R. 301-11).  The court found that the ALJ erroneously relied
upon plaintiff's failure to have back surgery without evaluating
the factors presented in Thompson v. Sullivan, 987 F.2d 1482,
1490 (10th Cir. 1993), and improperly discounted the opinion of
Dr. Siwek--a surgeon who had recommended back surgery.  (R. 302-
06).  The case was remanded for further proceedings to correct
the errors identified.

On remand, another hearing was held before ALJ Werner on
Nov. 21, 2001 at which plaintiff, a medical expert, and a
vocational expert testified.  (R. 279, 457-533).  The medical
expert and vocational expert who testified at the 2001 hearing
were different than those who testified at the earlier hearings.
Compare, (R. 25, 61, 97) with (R. 457).  Thereafter, ALJ Werner
issued a second decision in which he refused to reopen
plaintiff's previous application filed Dec. 16, 1992, found the
earliest date covered by the applications at issue is Apr. 22,
1993, found that plaintiff was disabled within the meaning of the
Act and regulations when he turned fifty-five on Dec. 13, 2000
but not at any time before, found that plaintiff's disability
insured status expired June 30, 1999, denied plaintiff's
application for disability insurance benefits, and granted

-3-

plaintiff's supplemental security income application effective
Dec. 13, 2000. (R. 279-88). Plaintiff again sought review.

When the second case before this court was ripe, and after
consideration of the issues and arguments, Judge Marten announced
the court's decision in a hearing on Mar. 1, 2004. (R. 583-601).
The court found that the ALJ had adequately discussed the issue
of reopening the prior decision, that the court was without
jurisdiction to review that determination, and that the ALJ had
properly considered the Veterans' Administration's determination
that plaintiff was unable to secure and follow a substantial
gainful occupation. (R. 594-97). Nonetheless, the court found
three errors in ALJ Werner's second decision and remanded for
further proceedings to correct those errors. (R. 597-98).
Specifically, the court found that ALJ Werner "provided an
adequate discussion of the evidence finding the plaintiff did not
meet the requirements" of Listing 1.05C but that "his discussion
of whether the plaintiff's impairments equalled [sic] the listing
is conclusory and it contains no examination of the evidence."
(R. 586). It found that, contrary to Spraque v. Shalala, No. 92-
1597-MLB, slip op (D. Kan. Feb. 8, 1994), ALJ Werner had failed
to properly apply each step of the three-step framework
articulated in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). (R.
588). Finally, the court found that ALJ Werner erred in
evaluating the opinions of Drs. Siwek and Varner and failed to

-4-

explain how the other medical opinions of record outweigh the
treating physician's (Dr. Varner's) opinion.  (R. 589-94).

On remand ALJ Werner again presided.  Another hearing at
which testimony was taken from plaintiff was held on Aug. 17,
2005.  (R. 548-82).  ALJ Werner issued a decision on Apr. 27,
2006 in which he found plaintiff disabled as of Dec. 1, 2000,
again denied the application for disability insurance benefits,
and noted that although plaintiff was disabled, "The component of
Social Security responsible for authorizing supplemental security
income has determined that the claimant's income precludes any
payment." (R. 539, 539-47).  In his decision, ALJ Werner set out
"Jurisdictional and Procedural History," "Issues," and
"Applicable Law," enumerated eleven "Findings of Fact and
Conclusions of Law," and stated his decision in the case.  <u>Id.</u>
The Appeals Council did not assume jurisdiction of the decision
on remand, so ALJ Werner's third decision is the final decision
of the Commissioner.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214
(10th Cir. 2004); 20 C.F.R. §§ 404.984, 416.1484  (2006).
Plaintiff now seeks judicial review of the final decision.

**II.  Legal Standard**

The court's review is guided by the Act.  42 U.S.C.
§§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of
the Commissioner as to any fact, if supported by substantial
evidence, shall be conclusive."  The court must determine whether

the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.   Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).   The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).   The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.   Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.   42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).   The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his

-6-

age, education, and work experience, engage in any other substantial gainful work existing in the economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that

-7-

prevents performance of past relevant work.  <u>Dikeman v. Halter</u>,
245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the economy within plaintiff's capacity.  <u>Id.</u>;
<u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes several claims of error in the final
decision.  He claims ALJ Werner (1) erred in failing to clarify
whether a herniated disc is a severe impairment in this case;
(2) failed to explain why plaintiff's condition does not equal
Listing 1.05C despite Judge Marten's remand specifically for the
purpose of making findings regarding equivalence; (3) erred in
his credibility determination both because he failed to properly
apply each step of the <u>Luna</u> framework as ordered by Judge Marten,
and because substantial evidence does not support the credibility
determination; (4) improperly evaluated the medical opinions of
the medical expert, Dr. McCown, and the treating physicians Drs.
Varner and Siwek; (5) improperly applied the Medical-Vocational
Guidelines (grids) by failing to recognize that plaintiff became
fifty in Dec. 1995 and that different grid rules applied between
Dec. 1995 and Dec. 2000, and by failing to apply the grid rule
applicable when plaintiff became fifty (20 C.F.R., Pt. 404,
Subpt. P, App. 2 § 202.14); and (6) improperly relied on
vocational expert testimony based upon a hypothetical that did
not precisely match the RFC assessment reached by the ALJ.

-8-

The Commissioner argues that the ALJ properly found plaintiff does not have a "severe" herniated disc, or if the ALJ's finding is error, it is harmless because he found "severe" degenerative disc disease and considered all of the evidence and all of plaintiff's symptoms, and finding an additional "severe" impairment of herniated disc would not have a substantial influence on the outcome of the case or leave one in grave doubt as to whether it had a substantial influence on the outcome.  He argues that the ALJ's failure to specifically explain his rationale regarding equivalence is harmless error and is supported by substantial evidence.  The Commissioner explains how, in his view, the evidence supports the equivalence finding. With regard to the credibility determination, the Commissioner argues that although the ALJ did not make explicit findings in the first two steps of the Luna framework, it is clear that he found a pain-producing impairment and a "loose nexus" between the impairment and plaintiff's allegations, and he properly considered all of the evidence in analyzing the credibility of plaintiff's allegations of pain.  He then argues that the ALJ properly evaluated the evidence and substantial evidence supports the credibility finding.  He argues that the ALJ properly weighed the medical opinions and substantial evidence supports the weight given to those opinions, and that the ALJ properly applied the grids as a framework for decision and relied upon the vocational

expert's testimony.  The court will consider each allegation of error in the order it would be reached in applying the sequential evaluation process.

Before beginning its review of the alleged errors, the court believes it is appropriate to explain what it will not do in this opinion.  As presented earlier, the court's review is limited by 42 U.S.C. § 405(g) to a determination whether in his <u>final</u> decision the Commissioner applied the correct legal standard in determining disability, and whether substantial evidence supports the Commissioner's decision.  <u>White</u>, 287 F.3d at 905.  Because two prior decisions regarding the applications at issue here were reviewed by the United States District Court for the District of Kansas, the record here necessarily contains prior opinions by this court explaining errors in the Commissioner's <u>earlier</u> decisions.  In so far as the court's prior opinions and the court's directions therein are not dicta and relate to issues present in this case, or concern application of the correct legal standard, they will be considered by this court and may be evidence tending to indicate error on the part of the ALJ.  However, the court will not apply "law of the case" doctrine in this case but will apply the doctrine of issue preclusion (collateral estoppel).  <u>Welch v. Barnhart</u>, Civ. A. No. 00-4203-JAR, slip op. at 10-34 (D. Kan. Apr. 2, 2003) Report & Recommendation (attached as Appendix 1) <u>adopted by the Dist. Ct.</u>

(Sept. 30, 2003)(each review of a final Social Security decision is a separate case, "law of the case" doctrine is inapplicable).

Issue preclusion is a principle whereby courts enforce finality of judgment and preclude re-litigation of issues previously decided.  Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398-399 (1981); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979).  Pursuant to the doctrine of issue preclusion, "'[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)).  "For the purpose of issue preclusion (collateral estoppel) . . . relitigation of an issue presented and decided in a prior case is not foreclosed if the decision of the issue was not necessary to the judgment . . ." Segal v. Am. Tel. & Tel. Co., 606 F.2d 842, 845 & n. 2 (9th Cir. 1979).  Because the doctrine of issue preclusion applies here, neither the Commissioner in the final decision at issue nor this court may assert a finding contrary to those findings necessarily decided by the prior courts' decisions without an intervening change in legal conditions.  Spradling v. City of Tulsa, 198 F.3d 1219, 1223 (10th Cir. 2000).

The court's responsibility here is to review the Commissioner's final decision, not to vindicate the court's

earlier orders, explanations, or instructions.  The court will apply preclusive effect to the issues necessarily decided in the court's prior decisions and will review the Commissioner's final decision in accordance with Tenth Circuit law.

### III. Step Two - Whether the ALJ Erred in Failing to Clarify If a Herniated Disc Is a "Severe" Impairment in this Case

Plaintiff claims the ALJ erred at step two by failing to make it clear whether he found that plaintiff had a herniated disc and whether that disc constitutes a "severe" impairment in the circumstances of this case.  (Pl. Br., 5-6).  Plaintiff acknowledges the ALJ stated that plaintiff has a herniated disc ("herniated nucleus pulposus").  (Pl. Br., 6).  But, he argues that because the ALJ found only one "severe" impairment ("degenerative disc disease of the lumbar spine"), it is unclear whether the ALJ "was actually finding that Plaintiff had a herniated disk or was merely reciting the evidence."  Id.  The Commissioner argues the evidence is equivocal at best and does not support a finding that plaintiff has a herniated disc; and he thereby implies that the ALJ did not find plaintiff has a herniated disc.  (Comm'r Br., 4).  He argues that even assuming the ALJ erred in this finding, the error is harmless.  (Comm'r Br., 5).

Both plaintiff and the Commissioner misunderstand the ALJ's decision.  The ALJ made his step two findings in finding no. 3 of the "Findings of Fact and Conclusions of Law."  (R. 542).  As

plaintiff claims, the ALJ found only one "severe" impairment, "degenerative disc disease of the lumbar spine," but he made a finding of fact that "The claimant has a herniated nucleus pulposus: as shown on the MRI done on October 12, 1995 there was a 'large left posterolateral disc herniation at L4-5 and a possible extruded fragment at this level.'" Id. It is clear that the ALJ found disc herniation as a fact. In finding 3, the ALJ noted several pieces of evidence which were in the record but which he did not accept as facts. In each case, however, he made it clear that he did not find that evidence to be "fact" material to his decision. He noted that the CT scan done on the same day as the MRI was equivocal, but he said nothing to detract from the findings of the MRI. Id. He stated that Dr. Varner's treatment notes are cursory. Id. He noted evidence of heart problems but stated that "This condition is not considered in this decision." (R. 543). But, in no way did he indicate that the MRI report's finding of a herniated disc was discounted. Moreover, herniated disc may be a result of degenerative disc disease. See Degenerative Disc Disease - Topic Overview (available at http://www.webmd.com/back-pain/tc/Degenerative-Disc-Disease-Topic -Overview, last viewed July 25, 2007); see also The Merck Manual of Diagnosis and Treatment 1489 (Mark H. Beers, M.D. & Robert Berkow, M.D. eds., 17th ed. 1999) (Herniated Nucleus Pulposus, "Degenerative changes (with or without trauma) may result in

protrusion or rupture of the nucleus.").  In light of these
considerations, the court finds that the ALJ made a finding of
fact that plaintiff had a herniated disc.

Because herniated disc may result from degenerative disc
disease, a finding that plaintiff has both "severe" degenerative
disc disease and "severe" herniated disc is unnecessary and would
be redundant where, as here, the ALJ made a finding of fact that
plaintiff has a herniated disc, and concluded that plaintiff has
"severe" degenerative disc disease.  Here the ALJ included disc
herniation within the "severe" impairment of degenerative disc
disease.  The court finds no error in the step two evaluation.

## IV.  Evaluation of Medical Opinions

Medical equivalence must be based only on medical findings.
Puckett v. Chater, 100 F.3d 730, 733 (10th Cir. 1996) (quoting
Kemp v. Bowen, 816 F.2d 1469, 1473 (10th Cir. 1987) (citing 20
C.F.R. 404.1526)).  Medical findings are "symptoms, signs, and
laboratory findings."  20 C.F.R. §§ 404.1528, 416.928.  However,
acceptable medical sources are experts qualified to express
medical opinions or judgments regarding a claimant's symptoms,
diagnosis, prognosis, abilities, and restrictions.  Id.
§§ 404.1527, 416.927.  Therefore, although medical equivalence
must be based only on medical findings, the significance of
medical findings is within the expertise of acceptable medical
sources, and an ALJ must weigh the medical opinions to determine

the significance of, and weight to attach to, particular medical findings.  Consequently, in certain cases medical opinions will affect the ALJ's determination whether a claimant's condition meets or equals a listed impairment.  In such cases, it will be necessary to evaluate the medical opinions while performing the step three evaluation.

This is such a case.  Although plaintiff's brief contains distinct sections arguing error in the ALJ's evaluation of the opinions of Drs. Siwek and Varner, he was compelled to make arguments at step three based upon the opinions of Dr. McCown, a medical expert who testified at one of the ALJ hearings, and Drs. Siwek and Varner.  (Pl. Br., 9-16, passim).  In its first review, the court discussed Dr. McCown's opinions when considering the ALJ's step three evaluation, and in its second review it discussed Dr. Siwek's opinion when considering the ALJ's step three evaluation.  (R. 298-300, 586-87).  The ALJ found it necessary to address medical opinions in making his step three evaluation in each of the three decisions in the record.  In the first decision, he discussed the opinions of Drs. Varner, Siwek, and McCown between his step two findings and his step three findings.  (R. 16-18).  In the second decision, he discussed the opinions of the medical expert witnesses, Drs. McCown and Baird, and of Drs. Varner and Siwek in his step three analysis.  (R. 282).  As mentioned earlier in this opinion, in his third

-15-

decision the ALJ referred to the medical opinions "As discussed below," in his step three analysis. (R. 543). Even the Commissioner, in discussing the step three evaluation in his brief, argued that "Dr. Gebetsberger noted Plaintiff's pain was underlined." (Comm'r Br., 8) (emphasis in original). Therefore, the court finds it appropriate and necessary to consider the ALJ's evaluation of the medical opinions before addressing the alleged errors in the step three evaluation.

### A.   Standard for Evaluating Medical Opinions

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with the regulatory factors. 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006). A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition. Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of examining sources are generally given more weight than the opinions of non-examining physicians who have merely reviewed the medical record. Robinson

-16-

v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2006).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must then determine whether it is consistent with other substantial evidence in the record.  Id. (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

-17-

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

The ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "If the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)). When a treating physician's opinion is inconsistent with other medical evidence,

-18-

the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[]' the treating physician's report, not the other way around."  Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988).

**B.    The ALJ's Discussion**

The ALJ discussed the opinions of Dr. Siwek, the "Veteran's Administration," Dr. Varner, and two medical experts who testified at the ALJ hearings, Drs. Baird and McCown.  (R. 544-45).  The ALJ found Dr. Siwek's 1995 notes were inconsistent with his 2004[3] statements regarding "symmetrically decreased" reflexes and muscle weakness, and found the contemporaneous 1995 notes more persuasive than the 2004 statements.  Of particular note to the ALJ was Dr. Siwek's 1995 statement that plaintiff "did not have 'significant motor loss with muscle weakness.'"  (R. 544).  The ALJ considered the VA's disability award but, "Because of the conclusory nature and lack of supporting documents" did not give the opinion significant weight.  (R. 544).

ALJ Werner noted that in 1995, 1996, and 2001 Dr. Varner provided very restrictive limitations regarding plaintiff's functional capacity.  (R. 544).  He discounted Dr. Varner's

_____

[3]The record contains no 2004 statement from Dr. Siwek. However, there is a statement from Dr. Siwek dated Jul. 20, 2005 in which he explains his 1995 treatment notes.  (R. 675-77).  The court finds this is the statement to which the ALJ refers.  For consistency with the Commissioner's decision, the court will also refer to this statement as the 2004 statement.

opinions because when Dr. Varner wrote his statement in 2001, it was the first time he had seen plaintiff since 1996; because Dr. Varner did not reference any objective evidence in the opinion; because Dr. Varner "apparently based" his opinion on plaintiff's report of severe chronic pain and the physician's diagnosis of degenerative disc disease; and because Dr. Varner opined plaintiff was physically capable of driving commercial trucks in 1995 despite opining that plaintiff had very restrictive limitations. (R. 544-45).

ALJ Werner noted Dr. Baird's opinion that plaintiff's condition does not meet Listing 1.05C. He stated his view of Dr. McCown's opinions: that lack of treatment between 1992 and 1995 indicated lack of severity during the period; that although the evidence established degenerative changes in plaintiff's lumbar spine, at most plaintiff would be limited in sitting and lifting only during flares of his symptoms; that flares would usually last only five or six days; that no medical evidence suggested a need to recline or elevate plaintiff's legs; and that plaintiff could sit for four hours and stand for four hours in an eight hour day so long as he was allowed to change position every thirty to forty-five minutes. (R. 545).

### C.  Discussion

Other than noting that Drs. Baird and McCown testified at the ALJ hearings (thus implying they were non-examining

-20-

physicians who had merely reviewed the medical record), ALJ
Werner did not specify whether he had considered any of the other
physicians as "treating sources," "non-treating sources," or
"non-examining sources" within the meaning of the regulations.
20 C.F.R. §§ 404.1502, 416.902.

ALJ Werner noted Dr. Varner treated plaintiff during the
period in question.  (R. 542).  He did not state he evaluated Dr.
Varner's opinions as "treating source" opinions.  Although
required to do so by regulations and Tenth Circuit precedent, he
did not state an evaluation of whether Dr. Varner's opinions are
well-supported by medically acceptable clinical and laboratory
diagnostic techniques or whether they are "not inconsistent" with
the other substantial evidence in the record, and might be
accorded controlling weight.  Assuming ALJ Werner determined Dr.
Varner's opinions could not be accorded controlling weight, he
made no evaluation of what lesser weight the opinions might be
worthy, again contrary to regulations and controlling precedent.

In making his step-two findings, ALJ Werner stated that Dr.
Siwek is a "consulting source."  (R. 542).  "Consulting source"
is not defined and does not appear in the Social Security
Regulations--20 C.F.R.  The court's research reveals that the
term is used six times in the Social Security Hearings, Appeals
and Litigation Law Manual (HALLEX).  In context, three times
where HALLEX refers to "consulting source," it is referring

-21-

specifically to acceptable medical sources who have performed a consultative examination of the claimant at the request of the agency.   HALLEX I-2-5-20; HALLEX I-5-4-13; HALLEX II-4-1-3. Three times in HALLEX, "consulting source," might be interpreted to include any "non-treating source."   HALLEX I-4-3-83; HALLEX I-5-4-18; HALLEX I-5-4-36.   West's Social Security Law and Practice notes that "non-treating source" was formerly referred to as "consulting source."   2 Soc. Sec. Law and Practice § 37:93, n.1 (West 2007).   "Non-treating source" is defined in the regulations as an "acceptable medical source" who has examined the claimant but who has not had "an ongoing treatment relationship with [the claimant]."   20 C.F.R. §§ 404.1502, 416.902.   Therefore, in stating that Dr. Siwek is a "consulting source," the ALJ suggested that Dr. Siwek is a "non-treating source."

However, ALJ Werner did not make a finding that Dr. Siwek is a "non-treating source."   He did not even discuss the relevant evidence necessary to make that determination.   The record is clear that Dr. Siwek is a surgeon who saw plaintiff twice in October 1995 for treatment, or evaluation for treatment, at the referral of his primary physician, Dr. Varner.   (R. 215, 245).   A "treating source" is an "acceptable medical source" who has provided plaintiff with medical treatment or evaluation and has had an ongoing treatment relationship with plaintiff.   20 C.F.R. §§ 404.1502, 416.902.   The Commissioner has explained:

-22-

> We may consider an acceptable medical source who has treated or evaluated you only a few times or only after a long interval . . . to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case we will consider the acceptable medical source to be a non-treating source.

20 C.F.R. §§ 404.1502, 416.902.

There is no indication in the record that plaintiff saw Dr. Siwek solely to obtain a report in support of his disability claim.  Dr. Siwek evaluated plaintiff twice in Oct. 1995, and determined plaintiff must have back surgery, but plaintiff never had the surgery.  As this court stated in its opinion on the first review, ALJ Werner stipulated that plaintiff "had a reason not to undergo surgery as a way of treatment.  (R. 303) (quoting (R. 81-82)).  Therefore, there remains a question whether the nature and frequency of evaluation in this case is typical for back conditions such as plaintiff's.  If so, Dr. Siwek is a "treating source."  If not, he is a "non-treating source."  There is no indication in the record ALJ Werner ever made the analysis.  The court is at a loss to determine if ALJ Werner decided whether Dr. Siwek is a "treating source" and whether controlling weight should be given his opinions, or whether lesser weight should be given the opinions.  ALJ Werner did not discuss such an analysis.

-23-

Were the court to assume it was appropriate for ALJ Werner not to give controlling weight to the opinions of Dr. Varner or Dr. Siwek, it would still be necessary to weigh all the medical opinions in accordance with the regulatory factors, remembering that opinions of treating physicians are entitled to deference.[4] ALJ Werner did not do so.  He did not discuss the length, nature, and extent of any treatment relationship nor the frequency of examination by any of the physicians.[5]  He did not state the regulatory factors relevant to evaluation of medical opinions.[6]

_____

[4]The court notes the Commissioner's brief stated the opinion of "a treating physician is entitled to deference only if it 'is well supported by clinical and laboratory diagnostic techniques.'" (Comm'r Br., 14) (quoting Castellano v. Sec'y of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). The Commissioner misunderstands the law, and misstates the court's holding in Castellano.  In Castellano, the court stated: "The Secretary will give controlling weight to [a treating source] opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." Castellano, 26 F.3d at 1029.  As discussed above, a treating source opinion is always worthy of deference.  Watkins, 350 F.3d at 1300.

[5]The court's analysis in this section relates solely to ALJ Werner's evaluation of the medical opinions in his third decision, the "final decision of the Commissioner."  Although in both earlier court decisions there was discussion of errors in the ALJ's evaluation of the medical opinions, this court is charged with reviewing only the final decision.  Moreover, the ALJ did not in any way incorporate his earlier analysis into the final decision at issue here.

[6]The court does not intend to imply that the regulatory factors must be stated in the decision or that a factor-by-factor analysis is required.  Rather, the court here is referring to the utter lack of explanation of what was involved in ALJ Werner's reasoning and the utter lack of discussion of the relative weight which the ALJ accorded to each medical opinion.

ALJ Werner stated that Dr. Baird was "a board certified orthopedic surgeon," and that Dr. McCown was "an orthopedic specialist" (R. 545), but he said nothing regarding the specialization of any other physician.  ALJ Werner's evaluation of the medical opinions rests almost entirely upon the ALJ's beliefs regarding the supportability and consistency of the opinions.  On its face, ALJ Werner's explanation can be read to properly discount the treating physicians' opinions and credit the medical experts' opinions.  However, as Judge Marten expressed during the second judicial review, the court does not "believe that most of these rationales hold water."  (R. 590).

Primarily this is so because ALJ Werner presents a very one-sided view of the evidence.  He does not discuss or summarize all of the evidence relevant to a particular opinion (both that which is supportive of the opinion and that which is contrary) and then weigh the evidence and explain his decision regarding the weight to be given the opinion and how he arrived at his conclusion.  Rather, he seems to present what he believes to be erroneous about certain opinions and what he believes to be correct about other opinions without relative weighing of the evidence and opinions, and without explanation of what weight is given to each opinion or how he reached that weight.  His summary of the evidence does not include all evidence contrary to his conclusions, and he mischaracterizes the evidence summarized.

The following discussion is by no means exhaustive and is given by way of example only. ALJ Werner stated Dr. McCown opined that plaintiff would have lifting and sitting limitations only during arthritic flares which usually last only five to six days. (R. 545)(without pinpoint citation). In fact, however, Dr. McCown testified that plaintiff has "significant degenerative changes in the lower part of his lumbar spine" "advanced stage disease" with "neuro foraminal encroachment" and "advance secondary changes," "and very seldom do routine degenerative discs ever get this bad, but it does look pretty bad on there, and from that point of view, if you had no neurological in the lower extremities, but just back pain related to the arthritic degenerative changes, you would still limit somebody's work for that alone." (R. 90). In answering counsel's follow-up question whether there might be a substantial range in the amount of pain such a condition might cause, Dr. McCown responded:

> The pain from arthritis in the spine is generally a waxing and waning type of pain. There might be a flare up in an arthritis back type condition where the patient might have severe back pain for four, five, six days at a time, but it always quiets back down again, and then you may have long periods where the back just has some stiffness and soreness, and the person is able to function and get around fine. And then who knows, next week, next year that he might get another flare up of it. . . . Now they may never be completely rid of pain. That's why they take arthritis pills, and then occasionally they may have to take a pain pill and a muscle relaxant during the bad times, but most people are able to with some common horse sense and alteration of lifestyle, limitations on work are able to live with and work quite well with an arthritic back condition.

(R. 91).  Counsel sought a definitive answer to the range of
periods of time one might have between flares.  The doctor
explained that it varies with individuals:

> If you have someone who is in a state of denial and
> tries to go out and be like they're 20 years old,
> they're going to be getting reminded by mother nature
> fairly frequently as to their back condition.  If
> you've got someone who's got common horse sense and
> accepts the situation, they may go months and months at
> a time and have mild symptoms that they can live with
> and work within the parameters of their restrictions
> quite well.

(R. 91-92).  Counsel asked if there would be variation in the
period between flares even if someone were following functional
limitations such as those the doctor suggested to the ALJ in this
case.[7]  (R. 92).  The doctor responded:

> Yeah, even with someone who is taken [sic] good care of
> themselves, they still might have occasional flare ups
> of severe pain, but generally if they take -- what I
> have patients do is, you know, I put them down in bed
> for a couple of days, and put them on some muscle
> relaxers and pain pills and have them start taking
> their anti-inflammatories a little more frequently, put
> a heating pad on their back, and usually within four,
> five, six days they're starting to quiet down and get
> back to their regular state of affairs.  When it is
> bad, it's pretty bad, and it can put you out of action
> for four or five days at a time, but then it quiets
> back down and you're able to go back to the way you
> were.

(R. 92).

---

[7]The doctor previously testified that he would restrict
plaintiff to alternate hourly between sitting, and standing or
walking; and would limit him to lifting or carrying fifteen
pounds frequently, and thirty pounds occasionally.  (R. 76-79).

-27-

In context, the doctor testified that plaintiff would have constant limitations on lifting and carrying; and must alternate sitting, and standing or walking; and would, nonetheless, have occasional flare ups lasting four to six days in which he would be off work; and the frequency of the flare ups would, at least in part, relate to the frequency with which plaintiff over-exerted himself and violated his limitations.

Further, ALJ Werner noted that Dr. Varner provided opinions in Oct. 1995, Apr. 1996, and Nov. 2001, but the ALJ did not discuss or analyze the 1995 and 1996 opinions whatsoever.  His analysis of the 2001 opinion is conclusory and he does not cite specific evidence in support of his rationale.  The ALJ also mischaracterizes or reaches a strained understanding regarding Dr. Siwek's opinions.  He acknowledged Dr. Siwek's notations in 1995 that plaintiff had "weak dorsal flexion of both big toes" and that plaintiff's "reflexes appeared symmetrical although both ankles were hypoactive."[8]  (R. 544).  However, he found that Dr. Siwek's 1995 notes "do not describe the reflexes as 'symmetrically decreased' nor do they describe muscle weakness." (R. 544).  ALJ Werner does not explain why "weak dorsal flexion

---

[8]Hypoactive is defined as "abnormally inactive," or "less than normally active."  Merriam-Webster's Medical Dictionary (Merriam-Webster, Inc. 2002) (available at  Dictionary.com http://dictionary.reference.com/browse/hypoactive, last visited Jul. 31, 2007).

of both big toes" does not constitute "muscle weakness" and why
symmetrical reflexes with less than normally active ankle
reflexes is not equivalent to "symmetrically decreased" reflexes.
He stated that Dr. Siwek's contemporaneous notes in 1995 are more
persuasive than the statement made in 2004 (R. 544), but did not
explain why he did not accept Dr. Siwek's notation on Oct. 23,
1995 that plaintiff "most probably would need to have a surgical
correction of the problem before he would be able to return to
any kind of work." (R. 245). As a final example, ALJ Werner
erroneously found Dr. Siwek "stated that the claimant, when
examined in 1995, did not have 'significant motor loss with
muscular weakness.'" (R. 544)(apparently quoting the record, but
without citation). The court is unable to find this quotation in
the 1995 notes or the 2004 statement, whether considered
affirmatively or negatively. In fact, the court finds no
reference by Dr. Siwek to either "motor loss," or "muscular
weakness." The closest references in any logical sense are Dr.
Siwek's references in his Oct. 19, 1995 treatment notes to "weak
dorsal flexion of both big toes" and in his Jul. 20, 2005
statement to "weak dorsal flexion of big toes." (R. 245).

In summary, in three decisions over a seven-year period, ALJ
Werner has failed to articulate a proper evaluation of the
medical opinions in this record. He has failed to apply the
correct legal standard, has not determined whether there are

treating source opinions which might be worthy of controlling weight, has not evaluated the relevant factors to determine whether controlling weight should be given to those opinions, has not weighed the evidence in light of all the relevant regulatory factors to evaluate medical opinions, has not properly examined the reports of the other physicians to see if they outweigh the treating physician's opinion, and has provided no relative weighing of the opinions whatsoever.  This is error.

**V.   Step Three, Whether Plaintiff's Impairment Equals Listing 1.05C**

Plaintiff claims his condition equals Listing 1.05C which was contained in the 2001 regulations in effect before Feb. 19, 2002.  The decision states, "claimant's musculoskeletal complaints are appropriately reviewed under Listing 1.05C as in effect at the time in question," and applies the listing in effect when plaintiff made application.  (R. 543).  There is authority to apply the 2006 listing since the final decision at issue was filed Apr. 27, 2006.  However, both parties seem to agree that the 2001 listing is appropriate.  (Pl. Br., 9); (Comm'r Br., 5); But see Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision").  The court will apply the 2001 listing.

In finding no. 4, the ALJ stated the criteria of the listing in one paragraph, and concluded in the next paragraph that "As discussed below, the claimant did not have significant motor loss with muscular weakness and reflex loss as required by the listing." (R. 543). Significant motor loss with muscular weakness and reflex loss is one criterion of Listing 1.05C. Therefore the ALJ's rationale, if supported by the evidence, is a basis to find the listing is not met.

Plaintiff claims the ALJ erred at step three because he failed to evaluate whether plaintiff's condition equals Listing 1.05C despite Judge Marten's specific order. The Commissioner admits "the ALJ did not specifically explain the rationale regarding equivalency," but argues the error is harmless because substantial evidence supports finding plaintiff's condition does not equal Listing 1.05C. (Comm'r Br., 6). He then explains how, in his view, the evidence shows there is no medical equivalence. (Comm'r Br., 6-8). Even assuming harmless error review might be applicable in a situation such as this, the court cannot find this error is harmless.

The Commissioner correctly states the law regarding medical equivalence. (Comm'r Br., 6-7). To qualify for benefits by showing that an impairment, or combination of impairments, is medically "equivalent" to a listed impairment, a claimant must present medical findings equal in severity to all the criteria

for the one most similar listed impairment.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); <u>see also</u>, 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be "at least equal in severity and duration to the listed findings").  Medical findings are "symptoms, signs, and laboratory findings."  20 C.F.R. §§ 404.1528, 416.928.  Equivalence is based only upon medical findings supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1526(b), 416.926(b).

The Commissioner argues that plaintiff has not presented evidence in the record which is equivalent to all the criteria of the listing and, therefore, his claim of equivalence must fail.  However, as suggested above, the significance of medical findings is within the expertise of acceptable medical sources and is not within the expertise of lay persons such as plaintiff's counsel, the United States Attorney, the Assistant United States Attorney, the Social Security Administration Chief Counsel for Region VII, the Assistant Regional Counsel, ALJ Werner, or this court.  Therefore, the significance of medical findings must be clear on the face of the evidence or must be explained in medical opinions in order for a lay person such as an ALJ to make a decision regarding medical equivalence.

However, ALJ Werner has erred in evaluating the medical opinions of record.  Plaintiff argues the medical evidence

including medical opinions establishes his condition equals the criteria of the listing.  (Pl. Br., 13-16).  The Commissioner argues the evidence including medical opinions establishes plaintiff's condition does not equal the criteria of the listing. (Comm'r Br., 7-8).  As opposing counsel have ably demonstrated, a case may be made for each position.  Moreover, the central issue here regards plaintiff's condition before June 1999.  The testimony of the Commissioner's medical expert, Dr. McCown, although somewhat ambiguous, can be read to state that plaintiff's condition <u>met</u> Listing 1.05C on two occasions.  (R. 71).  Later on, Dr. McCown noted that muscle spasm is not present here but that factor is often over-valued.  (R. 72).  Perhaps, there are other medical findings at least equal in severity and duration to muscle spasm and any other criteria which may not be met here.  Perhaps those medical findings would result in a determination of equivalence.  In the circumstances of this case, that is a determination which can be made only after a proper evaluation of the medical evidence.  Absent proper weighing of the medical opinions, the court cannot determine whether Listing 1.05C in the 2001 regulations is equaled.

**VI.  Remaining Allegations of Error**

Having found that ALJ Werner failed to properly evaluate the medical opinions and provided no analysis regarding whether Listing 1.05C was medically equaled, the court finds it

unnecessary to expend significant time evaluating the remaining claims of error.  Plaintiff asserts (Pl. Br. 16-17) and the Commissioner admits (Comm'r Br. 9), ALJ Werner failed to make findings regarding the first two prongs of the Luna framework for evaluating credibility.  (R. 543-44).  The Commissioner implies (Comm'r Br. 10) and plaintiff admits (Reply 10), courts are often lenient in requiring specific explanation of the Luna factors.  However, upon judicial review of the second decision, Judge Marten specifically noted the ALJ's credibility findings were inadequate, and remanded for the ALJ to make specific well-reasoned findings in accordance with Sprague.  (R. 588-89).

Moreover, the ALJ's consideration of the evidence regarding credibility suffers from the same deficiencies as his consideration of the evidence regarding the medical opinions.  His summary of the evidence does not include the record evidence which is contrary to his conclusions, he mischaracterizes the evidence summarized, and he does not weigh the contrary evidence and explain how the totality of the evidence leads to his conclusion.[9]  Once again, the ALJ's credibility determination in the third decision is inadequate.

As plaintiff argues, he became fifty years old on Dec. 13, 1995 and was, therefore, a "person closely approaching advanced

---

[9]However, the court does not hereby intend to indicate plaintiff's arguments regarding the ALJ's credibility evaluation are entirely correct.

-34-

age" between Dec. 13, 1995 and Dec. 12, 2000.  (Pl. Br. 30-31)
(citing 20 C.F.R. § 404.1563(d)).  The ALJ found that plaintiff
was a younger individual on his alleged disability onset date.
(R. 545) (citing 20 C.F.R. §§ 404.1563, 416.963).  The ALJ
determined a finding of "disabled" was directed by grid rule
202.06 after plaintiff turned fifty-five, leading to an inference
that he considered plaintiff's age as a "person of advanced age"
after turning fifty-five.  (R. 546); see also, 20 C.F.R.
§§ 404.1563(e), 416.963(e); 20 C.F.R., Pt. 404, Subpt. P, App. 2
§ 202.06.  As plaintiff argues there is no indication the ALJ
considered plaintiff was a "person closely approaching advanced
age" between Dec. 13, 1995 and Dec. 12, 2000.  Thus, there is no
evidence the ALJ considered the grid rules to determine whether
plaintiff was disabled by operation of the rules after he turned
fifty.  This is error, although it may be harmless because rule
202.14, if applied, would direct a finding of "not disabled."

In his final claim, plaintiff argues that the ALJ found
plaintiff can sit four hours in a workday, but presented a
hypothetical to the vocational expert that plaintiff was limited
to "four to five" hours of sitting.  (R. 32).  He argues that
because of this inconsistency, the hypothetical presented to the
vocational expert did not precisely match the ALJ's RFC
assessment and the vocational expert's testimony thereon is not
sufficient to support the ALJ's decision.  Plaintiff's argument

misses the totality of the hypothetical presented.  The ALJ
stated in his hypothetical, "a limitation to about four hours
standing, sitting not restricted, though below four to five hours
for purposes of present question." (R. 526).  Although ALJ
Werner's hypothetical was less than precise, in context the court
finds no reversible error where the RFC called for four hours
standing and four hours sitting, and the hypothetical called for
four hours standing and "four to five hours" sitting.

**VII. Reverse and Remand for an Immediate Award of Benefits**

The Tenth Circuit has recently reiterated the standard to be
applied when considering whether to remand for an award of
benefits.  <u>Salazar v. Barnhart</u>, 468 F.3d 615, 626 (10th Cir.
2006).  The decision to remand for an immediate award of benefits
rests within the court's discretion.  <u>Id.</u> (citing <u>Ragland v.</u>
<u>Shalala</u>, 992 F.2d 1056, 1060 (10th Cir. 1993).

> Some of the relevant factors we consider are the length
> of time the matter has been pending, <u>e.g.</u>, <u>Sisco v.</u>
> <u>United States Dep't of Health & Human Servs.</u>, 10 F.3d
> 739, 746 (10th Cir. 1993), and whether or not "given
> the available evidence, remand for additional
> fact-finding would serve [any] useful purpose but would
> merely delay the receipt of benefits." <u>Harris v. Sec'y</u>
> <u>of Health & Human Servs.</u>, 821 F.2d 541, 545 (10th Cir.
> 1987).

<u>Salazar</u>, 468 F.3d at 626.

The time this matter has been pending is a weighty
consideration in this case, for the applications at issue here
were first protectively filed on Oct. 16, 1995.  (R. 118-24).

-36-

Plaintiff has been seeking a proper adjudication of his
disability for twelve years.  In that time, plaintiff has
appeared at five ALJ hearings, and three decisions have been
issued, each of which has been adjudged to be erroneously
evaluated.  Twice previously the court has ordered remand,
finding that the ALJ did not perform a proper step three
evaluation and did not properly weigh the medical opinions, and
indicating that the ALJ had failed to properly consider and weigh
all of the evidence.  Each time, on remand the issues were
assigned to the same ALJ who committed the same errors in the
next decision.  The Commissioner is not entitled to adjudicate a
case ad infinitum until he correctly applies the proper legal
standard and gathers evidence to support his conclusion.  Sisco,
10 F.3d at 746.

     Moreover, it is not likely that "given the available
evidence, remand for additional fact-finding would serve [any]
useful purpose but would merely delay the receipt of benefits."
Harris, 821 F.2d at 545.  The Commissioner has determined that
plaintiff is disabled.  He has determined that plaintiff's income
at all relevant times precludes payment of supplemental security
income.  Therefore, the real issue here is whether plaintiff's
disability began before his date last insured for disability
insurance benefits--June 30, 1999.  All of the medical evidence
relevant to this issue has been available for eight years and for

all but the first decision of the Commissioner.  No one makes any argument that evidence relevant to this issue exists and is not in the record but would be available on remand.

Like the court in <u>Salazar</u>, this court finds it difficult to imagine that a medical professional could provide a retrospective analysis of Mr. Smith's medical condition between April 1993 and July 1999.  Moreover, if such an analysis were produced it would be based of necessity upon the medical evidence and medical opinions already in the record and, as such, would be merely cumulative evidence.

Plaintiff's treating physicians, Drs. Varner and Siwek, provided medical opinions which, if credited, establish that plaintiff is disabled at least since Oct. 1995.  (R. 211, 212, 224-28, 245, 454-55, 675-77).  In three decisions, the Commissioner has discounted those treating physicians' opinions. Each time the court found error in the Commissioner's analysis. The Commissioner's reliance on the fact that the VA physicians recommended no surgery is unavailing because the record does not reveal why the VA physicians recommended no surgery and because the ALJ found that there are sufficient reasons not to undergo surgery in this case.  Further, the record reveals the VA awarded plaintiff a disability pension.  Consequently, the court finds the only determination necessary is the onset date of disability.

Before Oct. 1995, no physician provided an opinion which concluded plaintiff could not work, although Dr. Varner later opined that plaintiff was disabled beginning Dec. 1992.  In Oct. 1995, both Dr. Varner and Dr. Siwek opined that plaintiff was disabled.  Although the Commissioner relied upon the opinion of the medical expert, Dr. McCown, to discount the treating physicians' opinions he did not do so properly.  Moreover, the opinion of a physician who has merely reviewed the record will generally be worthy of less weight than the opinion of a treating physician.  Further, Dr. McCown's testimony, although somewhat ambiguous, may be understood to indicate that Listing 1.05C was met in Oct. 1995, and that plaintiff had little follow-up treatment between Dec. 1992 and Oct. 1995.  (R. 70-71).  On Feb. 19, 1993, Dr. Stein indicated that more information and testing was necessary to determine the extent of plaintiff's condition (R. 243), but there is no indication additional testing was done on that condition until Oct. 1995.

Plaintiff's primary treating physician at the time, Dr. Varner, indicated on July 28, 1995 that plaintiff was medically able to drive commercial trucks.[10]  (R. 216, 219).  In Oct. 1995,

---

[10]Although Dr. Varner argued that recommending extension of plaintiff's driver's qualification was not inconsistent with his other statements because the forms did not ask whether plaintiff was limited due to pain from degenerative disease, the court finds that asserting the ability to drive trucks commercially is inconsistent with asserting a need to recline and elevate ones legs for four hours of the workday and inability to sit for more

-39-

Dr. Siwek found plaintiff unable to work at least until he had back surgery. (R. 245). In Oct. 1995, Dr. Varner indicated plaintiff could not work, and in Apr. 1996 he provided an opinion on plaintiff's capabilities which necessarily implied plaintiff cannot work. (R. 211, 224-28). Because plaintiff's treating physician, Dr. Varner, indicated on Jul. 28, 1995 that plaintiff could work, and two months later in Oct. 1995, both Dr. Siwek and Dr. Varner indicated that plaintiff could not work, the court finds that the onset date of disability is Oct. 1, 1995.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner with directions to find plaintiff disabled beginning Oct. 1, 1995, and to award benefits accordingly.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

---

than one hour of the workday.

Dated this 9th day of August 2007, at Wichita, Kansas.


                                    s/John Thomas Reid
                                    **JOHN THOMAS REID**
                                    **United States Magistrate Judge**